Case 16-7122. Chaim Kaplan et al. Appellants v. Hezbollah, also known as Hezbollah, also known as Hezbollah, also known as Hezbollah, also known as Hezbollah et al. Mr. Katz for the appellants. Mr. Shelley, court appointed. Amicus curiae. Your Honor. The risk of... I don't want to repeat. Can I assume that everything you've said... Yes, everything you've said in the prior case carries over and just tell us what additional argument you need to make here, if any. Sure. I guess I want to elaborate a little bit more on the last point I was just making regarding active war. Imagine one of these Hezbollah fighters goes on his break, eating lunch, whatever it is, and goes to a civilian prison not far from his camp in Hezbollah territory in southern Lebanon and kidnaps a civilian prisoner that he has access to for whatever reason. Not an Israeli, nothing to do with the Israeli conflict, just, you know, he's in there for larceny, I'd say. And tortures him for fun. Tortures him. For fun. On his break. As soon as he's done, that's how he gets his kicks, that's how he gets his energy, to go back and fight some more on the front lines. And after he's done, he's going to go back and he's going to go back to the war. Was that in the course of armed combat? Is that possible? That that would be considered in the course of armed combat? I can't imagine how that could possibly be in the course of it. He's doing something that clearly has nothing to do with the war. If we accept by hypothesis that nexus is the relevant standard, I think it begs the question, what kind of nexus? I mean, yes, it was in the same time, sort of. It was on break. Same general location. But that's not an adequate nexus to be considered in the course of armed conflict. But obviously, Congress, in writing the words in the course of armed conflict, was trying to express that it has to be this act, this terrorist act, or not. But it has to be, actually. It has to be international terrorism to be relevant here. It has to be relevant to, in some substantive way, the armed conflict that we're talking about. But that seems like that would be the question in your hypothetical, is whether it counts as international terrorism to begin with. Oh, OK. You're right. Maybe it's not a perfect hypothetical, because it would have to be to coerce a civilian population. That's true. I have to modify the hypothetical. But I'm sure we can imagine something where you would get that and raise this other question. Going back to hypothetical jurisdiction briefly, we did not talk about the threshold issue in the prior appeal. I just wanted to address that briefly. Threshold issues are common levels of dismissal that courts of health can be addressed before jurisdiction. Common levels of dismissal, such as for an inconvenience, public policy issues, such as the political question doctrine, this is a statutory exception. This is your bread and butter, merits exception. It has nothing to do with the threshold issue exception to the general rule. First of all, I'm not aware of an example where an issue was found to be threshold that was a statutory enactment, specific to a particular cause of action. I don't think it exists. And it shouldn't. These are common levels of dismissal akin to jurisdiction. That's what they do. They throw the case out. One more point here. If the act of war exception is jurisdictional, Judge Kavanaugh raised in the last appeal that the court has to raise it to a sponte. I think there's some finer point that has to be made. It has to be raised first. You, the district judge, cannot address international terrorism until you've addressed act of war, which is exactly backwards. It's certainly backwards from what Congress intended. You can't even consider whether or not there's a cause of action here for international terrorism until you've addressed subject matter jurisdiction, act of war being subject matter jurisdiction by hypothesis. You have to do that first. To my knowledge, no case has done it that way. And it would upend all of these cases in the way that I think everyone thinks of this cause of action. Regarding an issue raised by the amicus in a footnote on this court's pellet jurisdiction, very briefly again, I think that the case was quite clear that a court can rule implicitly, which the district court clearly did here. The district court entered a final judgment on its own terms, evoking rule four, frat four, clearly intended the decision to be final. And if there were any outstanding claims, implicitly they were dismissed. On top of that, I don't think there were any. It's certainly arguable that there were no outstanding claims. Probably the district court certainly, I should say, assumed that there were no outstanding claims. He wrote that. The only claim remaining, I think, was the district court's language, is this FSIA claim, the Foreign Sovereign Immunities Act claim. There is nothing else. Clearly, he thought that there was nothing else. And even if there would be some other claim, there were no other damages that we could have gotten. A plaintiff can only win once, as the Seventh Circuit wrote. And we won. We won as much as we could have won against Iran and against North Korea. And there was nothing else that any claim could have done. So they were redundant, or at least as far as damages were concerned, certainly they were redundant. And there was nothing more for the court to decide. So can I just ask you one question? On the claims, when you win a default judgment, could you take an appeal if the default judgment is entered without an assessment of personal jurisdiction? Because under your theory, there's still something missing in the judgment because you won't be able to enforce it if the judge didn't dot I's and cross T's on personal jurisdiction. So you could probably take an appeal. I think so. We very explicitly did not appeal as to the judgments against North Korea. We were very clear about that. We were only appealing vis-a-vis Hezbollah against whom we lost. But had we won against Hezbollah and nevertheless wanted to appeal on this jurisdictional issue, I think we could. Even though you won a default judgment, you could still appeal. It's because our interests are intact. By hypothesis, we don't have an enforceable judgment. Advisory opinion. I mean, it's so inconsistent. I mean, if you have some authority to support it, I'd love to hear it. It is so inconsistent in the way we do business. It is speculating about what might happen in later proceedings. And your argument seems to be we'll be advantaged if we get another additional opinion here. I'm sorry. Go ahead. I don't understand my point. Certainly. The underlying litigation, the purpose of the underlying litigation against the defendant is to get an enforceable judgment. That is the objective. By hypothesis, and these are not our facts. I want to be clear. But by hypothesis, we did not. That which we were after, we did not receive. I think that's appealable. But to answer your question specifically, I don't have a case for that. But to me, it makes a great deal of sense. I did not receive an enforceable judgment. If you're right on the Steele Code issue, how could a judgment be issued? If I'm understanding my colleague's question, how could an appealable judgment have been issued if the district court hadn't determined personal jurisdiction in the first place? The case is final in the court. The clerk has entered final judgment. So if I understand your question, your question is nothing happened because the court didn't address jurisdiction by hypothesis. Well, on the theory that you've been arguing all morning. Yes. But we can't do anything in the district court because the case is closed. If you come back to the district judge and say, I'm sorry, you didn't do everything you were supposed to do, the district judge would most likely say, yes, I did. And what do we do at that point? We have 30 days. You know, the clock is ticking. As Your Honor said a minute ago, I need the file. You don't even have an obligation to raise with the district court. The district court's the – it makes no sense to me. The party that has the right can waive it. If they fail to raise it, it's lost. You're the party – let me just play it out for you. You're the party that does not have the right with respect to personal jurisdiction. And as I hear your argument, you're saying, I don't even have to raise that with the district court. I can take the judgment as given with no disposition on personal jurisdiction and then appeal and say the district court should be reversed and the case sent back because personal jurisdiction was not resolved as Senate crime and, you know, the cases that you're relying on is required. It doesn't make any sense to me. This whole jurisdiction is waivable. Whether or not it's a – within the steel-coiled compass, I understand that argument. It doesn't bother me one way or another. But it does make no sense to me that the party that has the right to assert it can waive it. And you're saying you can't. Personal jurisdiction with respect, Your Honor, I don't believe is waived in default actions, particularly in the FSIA cases, which is what I think we're talking about. I'm not sure if we're talking about the Federal Arbiter of North Korea anymore. These aren't our facts anyway. But if it would be an FSIA case, for sure. It's otherwise waivable, as Judge Edwards points, by the defendant, which makes it odd to my mind that it comes within steel-co, but nonetheless it may come within steel-co. But your broader point, just so I'm clear, seems to be that even if no one here had mentioned personal jurisdiction, if one of us thought about it, which hopefully we would, we would have an obligation on our own to say, wait a second, we have a flaw here. The district court never addressed personal jurisdiction first. Even though you didn't raise it below. You're claiming you would have a right to raise the question, and you didn't bring it to the attorney in this case. No, no, no, we're just talking about your larger theory. I just want to make very clear, in this case we did raise it below. I don't want to be confused by that. I'm just trying to understand the larger thesis. Yes, I think that's what the Supreme Court held. I think your principle, as I understand it, is limited to default judgments, because your point is that under our court's cases, personal jurisdiction is something that the district court has to do before entering a default judgment. If you have a defendant, and the defendant waived personal jurisdiction, absolutely. I'm getting confused because the facts keep changing. If you have a defendant, and the defendant waives it, it's over. Right, and waiver for personal jurisdiction purposes is not your typical waiver because waiver is a failure to raise. Personal jurisdiction, I think you have to affirmatively raise it in order to preserve it. And if you don't affirmatively raise it, it's gone. I believe that's correct. But in a default judgment case, the whole problem is that there's no defendant to assert personal jurisdiction, and so our cases require a district court to assure itself of personal jurisdiction before entering a default judgment. Correct. Absent that, I think, I'm not saying you necessarily win on this argument, but absent that, you'd have an even more difficult argument, because the reason that you have the ability to say on appeal that personal jurisdiction had to have been found below is because this is a default judgment case, I think. Yes, in this appeal? Yes. In this appeal. Okay, anything else? We'll give you time on rebuttal. Thank you very much. Good morning. Good morning, and may it please the Court. I'm Anthony Shelley, the amicus appointed to defend the parts of the district court's judgment that are up here on appeal. In my brief, I've tried to defend the district court's decision on the act of war exception and also indicated why the district judge was not an error in bypassing personal jurisdiction, but I also raised an issue of appellate jurisdiction that I'd like to just go into for a moment. The issue arises because of potentially unresolved claims under the applicable law theory against North Korea. I think that the plaintiff's counsel has made a very strong case that the district judge intended his decision to be final. I think there's also a very good argument that for most of the plaintiffs, the finding on the FSIA did end the case, but there are two plaintiffs in this case. Their names are Michael Fuchs and Daniel Sauter, who don't have FSIA claims. They instead had only claims under applicable law, and that's because they aren't U.S. citizens. That comes out in the document that appears in the record as the conclusions of law, the proposed findings and conclusions of law. There are two people present here whose claims were not decided, and, in fact, the district court held that Mr. Fuchs didn't have standing to raise an FSIA claim and gave him zero as a result. So there is relief that he could get under theory of applicable law. The judge never said he was declining supplemental jurisdiction over these people so the reality is what we have is a situation where a judge thought he was entering a final order, but in reality there are some claims that weren't resolved. And I don't think your case is yet resolved whether that means you have appellate jurisdiction or not in the sense of a final order that was intended to be final but really isn't because the Muir case comes close. It's an unpublished decision where a judge thought he was issuing a final order called the final judgment, but the court dismissed the case for lack of appellate jurisdiction because there was some cleanup work that hadn't been done. There were some claims that the judge inadvertently didn't realize still existed, and the court dismissed it and sent it back to have that cleaned up. So I would argue or I would flag for the court this issue of appellate jurisdiction. So can I take you to the other issue that you raised, which is whether it's proper for this party to bring the issue of personal jurisdiction to this court since it's an issue on which it would win, since it would result in a proceeding that may not accomplish a whole lot. So my question to you is this. Their argument is that there's something at stake for them because the sanctity of the judgment depends on whether the district judge made a finding of personal jurisdiction, and that's sort of a race judicata argument. As I understand the law, if a plaintiff gets a dismissal without prejudice, they have a stake in getting that dismissal converted into one with prejudice. Why? Because of the race judicata consequences. So I assume that if a plaintiff gets a dismissal without prejudice, they can appeal on the ground that that dismissal should have been entered with prejudice. Why isn't the analogy here that what the plaintiffs would say is, Yeah, you know, there's a resolution here, but we want a different kind of resolution because we want one that carries race judicata consequences and that we don't have to revisit later on. That's what we have at stake. So it's like kind of converting a with without prejudice into a with prejudice. I think if it had been raised in front of the district judge, it could have been resolved. It was never raised in front of the district judge, and it only comes up here. So that's one angle. But I don't have an issue with that. In fact, being necessary, but I think it then does bring you back to the issue of is the personal jurisdiction question a jurisdiction, excuse me, is the act of war exception jurisdictional or a threshold issue, which would, I think, still allow the district judge to just go right to the end in that case. Now, it could be that after the district judge, I think what happened here, if the district judge went right to the end of the case and said, Look, on the merits or on a separate jurisdictional issue, I can't approve of the default because there's no cause of action in the first place, let's say. Then if that was the case and the plaintiff wanted to appeal that issue, I think it would have been incumbent on the plaintiff to go back to the district judge and say, I think I'm going to get that reversed, and because then I want to have a full judgment, you need to deal with personal jurisdiction. But the reality is if they win a reversal on the act of war, it goes back to the district judge, and they can get everything corrected. The posture of this case is odd, that they lost, and they sort of want to go back to win personal jurisdiction, only to lose again on the act of war exception. I think they do not want personal jurisdiction in that case because they're not quite sure. Why do their motives matter, really, in the end, If personal jurisdiction has to be considered at the outset, and that if, then that wasn't done. It wasn't. It wasn't done here, and I think in the context of a default, a judge doesn't have to assure himself of personal jurisdiction necessarily because I think the case law does indicate he can rule in favor of the same party, who he might have ruled in favor of on personal jurisdiction, by finding that there was no claim in the first place. But otherwise, I agree that the Forrest case, for instance, suggests that personal jurisdiction may be something that has to be considered first, but only if the thing the judge did consider was not also jurisdictional or not at first. Right. If act of war is not jurisdictional, and if personal jurisdiction has to be considered first. Or if act of war is not threshold. Not threshold. It's correct if it's neither threshold nor jurisdictional. Then if Forrest is the law, then the district judge would have had to have considered personal jurisdiction. Wait, wait, wait. Why? Do you read Forrest to say that personal jurisdiction is jurisdictional in the steel company sense, or does it say it's threshold? Well, I read Roergass as suggesting there's Roergass, the Supreme Court case, that there is a similarity between personal jurisdiction and subject matter jurisdiction as being the kinds of things a judge should consider first in a case. Can consider first. Well, subject matter must. Right. Personal can. And in fact, in Roergass, what happened was the court considered personal jurisdiction. Instead of subject matter jurisdiction, the court said that was fine. You can order them that way. So I think that's what Roergass says. And I think Forrest then very sternly came down on the district judge for not considering personal jurisdiction. Right. But didn't say must. It didn't say must, and it also was predicated on uncertainty as to subject matter jurisdiction. It did say must. I mean, it effectively said must because it blasted the district judge for not doing it, and now it has to be a must. I'm not sure I follow that, just if I can get your reaction to it, because that would be true of foreign nonconvenience, too. So foreign nonconvenience is a threshold that can be considered first. But I don't think anybody thinks that because foreign nonconvenience can be considered first, it has to be. And in Forrest, the reason, arguably, the reason that personal jurisdiction becomes a threshold thing that could be considered first is because there was a debate about subject matter jurisdiction. And then once you open the floodgates with the debate about subject matter jurisdiction, any threshold can be the threshold ground you consider, including foreign nonconvenience or personal jurisdiction. Well, I don't want to disagree because I think that then leads to the conclusion that the district judge was fine in bypassing personal jurisdiction. Yeah, I mean, you're saying Forrest, if you had only personal jurisdiction in Forrest, the result, what we had to say about it would have been different. There would not have been a requirement. And it could have been decided first, but it wouldn't. This court would not have been required to consider first. That's your argument. Yes, since it was the only the only one. Judge Kavanaugh points out, obviously, the opinion went to great lengths to say that personal jurisdiction was an easy issue that should have been resolved. Exactly. And I think moving to that somewhat, I guess this should have been or you're agreeing with that. I'll just say, wow, that's tough language. If it's just should should have been. I wouldn't have been losing end of that because it was very it was very strongly worded that the district judge had done the wrong thing. I think that we can if the law is murky there. I think we can bypass it, though, by calling the act of war and correctly calling it a threshold issue. I my colleague for the Iranian banks indicated why it was jurisdictional, but I don't think you have to quite go. And I would agree with much of the argument. I don't think you have to go quite there. I think you can hold that under the tenant case. It is a threshold issue, something like abstention or some. I agree that most of these threshold issues can be common law doctrines as opposed to statutory doctrine. But this this one here looks a lot like the threshold issue that was involved in tenant, which is a rule from an earlier case, taught that you may not maintain a lawsuit if it if it if it involves the United States's intelligence agreements with spies. And the court was very concerned about sort of the political and national security overtones of that case and said, almost in a political questions kind of way, say, we're going to treat this as a threshold issue because it's a sensitive area. And therefore, you don't need to get to jurisdiction first where you can rule on this, this tenant doctrine. And so I think our the act of war exception looks very much like the doctrine that was issued at issue in the tenant case, which is a a rule that you shall not maintain a particular type of lawsuit in a politically charged situation. And so it's very whether it's whether it's really jurisdictional or just an element of a case or affirmative defense doesn't really matter in that sense. If it's a threshold consideration. But you don't think statute of limitations is a threshold issue like that? No, because I don't think it has the political questions overtones that this one does. In fact, I think that if the act of war exception wasn't in the statute, the courts would have had to have created it, because I think what Congress was doing was saying determining liability of a party in the context of two nations having a war or paramilitary having a war with a nation is too fraught with political sensitivities for the U.S. courts and judges to be determining liability or picking sides with that. Unfortunately, you know, heinous things are happening, but it's not for the U.S. courts to be picking sides and determining liability in those situations. I think it would have. And so what Congress did really with the act of war, I definitely don't agree with that, although I realize that's like your fourth alternative. But I strongly disagree that Congress couldn't do that. That Congress couldn't enact a statute without the act of war exception. Well, it certainly could have. But I think the court would have seen the courts would have had to create an act of war exception. I don't see that. Well, I think the courts would have, if they're going to pay heed to the political questions doctrine, I think they would have said this is an area better left to the legislative and executive branches than to the judicial branch to determine liability in that context. But again, I don't think you need to quite say it's a political question, but because of like the tenant case, it's a threshold issue that uses the word maintenance and involves a sensitive area. It approaches the type of threshold issue that was there. And so if the case law is such as Forrest suggests that it could be, you could bypass the issue under this theory. As to the final issue, the act of war exception in the case, the parties in the other case in here have already talked quite a bit about it. But there are two elements that were relevant to Judge Lambert's decision, and that is whether Hezbollah's rockets attacks were any act occurring in the course of a war or armed conflict. And two, was that war or armed conflict between military forces of any origin? And I agree, obviously, with the Iranian banks that in the course of should mean something like during, should be given its natural meaning. Tied in time, space and place and manner to the armed conflict, as opposed to the imprint of sort of the law of war into the words in the course of. I think Judge Lambert got that correct in that respect. And on the question of whether Hezbollah is a military force of any origin. One thing I wanted to point out is that Hezbollah is a little different than, say, Al Qaeda in the sense that Hezbollah is a political actor and part of the government of Lebanon. And as a result, it's a very unique situation. Judge Lambert recognized this, that you have a designated terrorist organization that is part of a government and also part of as part of the government defending essentially the territory of Lebanon, whether right or wrong. Are you trying to say Al Qaeda couldn't benefit from the act of war exception, therefore? Well, it's distinguishable. It's a distinguishable situation in the sense that they might not be a military force of any type, as opposed to Hezbollah comes closer to being a military force of any type, because it's also a political entity with leadership in the Lebanon government. So it's essentially part of the sovereign, and its terrorists or fighters are closer to what we think of the military, and that is a nation's offensive or defensive forces. And I also just want to conclude with, I'm not sure you need to get to whether they're a military force of any kind, because the exception B in the act of war exception allows for the act of war exception to apply whenever you have any act occurring in the course of an armed conflict between two nations. And I think Judge Lambert's fact findings were sufficient to call what was going on here a war between Lebanon and Israel, and these acts occurred in the course of a war between Lebanon and Israel. And it says any act that occurs in the course of an armed conflict between two nations. If this is deemed a conflict between two nations, it makes no difference whether Hezbollah is a military force of any kind. Anybody trying to further the war effort between those two countries would be deemed to have taken an act in the course of an armed conflict between those two nations. Thank you very much. Brief rebuttal. Brief. The Forrest decision criticized the district court over, quote, leapfrogged, leapfrogging, over the serious jurisdictional issues that Bailey, et cetera, later should have satisfied any jurisdictional concerns. In the next paragraph, what is clear, that we can turn directly to personal jurisdiction in order to resolve this case. I think it's clear from these experts, obviously I'm not, there's no context here, but from the experts that I read, I think it's very clear that the court understood personal jurisdiction not to be a threshold issue. It was criticized in the district court for leapfrogging over jurisdiction and then turned to a type of jurisdiction. Just reading the decision, I think that's clear. If it is a merits issue, which I think it is, I mean, I think it clearly is, I think this is, I'm talking specifically, excuse me, about the act of war exception. This is a rule that determines whom may sue whom for what. It cannot be a threshold issue. That's very clear in the case law. A merits issue is not a threshold issue. Threshold issue is just as clear as its intended. The threshold issues are by definition non-merits. One final point regarding the relationship between Lebanon and Hezbollah. Lebanon, at least officially, unofficially is not so clear, but officially, and the UN as well, very clearly view Hezbollah as violating the sovereignty of Lebanon. In occupying Lebanon's physical space, in launching attacks from Lebanon's physical space, that was clearly spelled out in the UN declaration, the ceasefire declaration. There were parties to which were Israel, Lebanon, and Hezbollah, and the relationship between the parties makes strikingly clear. That Hezbollah was to, Israel was to withdraw, Lebanon was to move in for the purposes of asserting their sovereignty and preventing Lebanon from continuing their attacks. Are there further questions? Thank both counsels. The case is submitted, and Mr. Shelley, you were appointed by the court for this case, and the court greatly appreciates your excellent assistance. Thank you.
judges: Kavanaugh, Srinivasan, Edwards